# In the United States Court of Federal Claims

No. 15-601C

(Filed: June 3, 2016)

```
*************************************
                                    *
WALTER N. STRAND, III,              *
                                    *
                     Plaintiff,     *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
                     Defendant.     *
                                    *
*************************************
```

Action for Review of Military Records; Assistant General Counsel's Reversal of Decision by Board for Correction of Naval Records; Standard of Review; Counterclaim for Return of Funds Erroneously Paid to Plaintiff.

*Jeffery M. Chiow,* with whom was *Lucas T. Hanback,* Rogers Joseph O'Donnell, P.C., Washington, D.C., for Plaintiff.

*Daniel K. Greene,* with whom were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Douglas K. Mickle,* Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Plaintiff, an enlisted serviceman in the United States Navy, brings this action to correct the manner by which he was separated from the military after more than 19 years of largely exemplary service. In a proceeding before the Board for Correction of Naval Records, the Board primarily agreed with Plaintiff's position, but the favorable ruling was promptly reversed in a two-paragraph memorandum by the Assistant General Counsel for Navy Manpower and Reserve Affairs. The Court must review whether the Assistant General Counsel's reversal of the Board's decision is arbitrary, capricious, an abuse of discretion, or not supported by substantial evidence.

## Factual and Procedural Background[1]

Plaintiff, Walter N. Strand, III, commenced this action on June 15, 2015 requesting the correction of his military records along with back pay and entitlement to future pay. Mr. Strand initially brought this action by filing a complaint as a *pro se* plaintiff. Shortly thereafter, Mr. Strand was able to secure representation through this Court's pro bono referral program and subsequently filed an amended complaint on October 8, 2015. On January 15, 2016, the Court denied the Government's motion to dismiss each of Plaintiff's four asserted claims. Currently pending before the Court are Plaintiff's motion for judgment on the administrative record (Dkt. No. 23), Defendant's motion to supplement the administrative record (Dkt. No. 33), Defendant's cross-motion for judgment on the administrative record (Dkt. No. 35), Defendant's first counterclaim (Dkt. No. 36), Plaintiff's second motion to strike (Dkt. No. 37), Plaintiff's motion to dismiss the counterclaim (Dkt. No. 42), and Defendant's motion to remand (Dkt No. 52).

Mr. Strand's claims before this Court involve the manner in which he was separated from the Navy. Mr. Strand enlisted in the Navy in 1988 and served for more than 19 years, rising to the rank of Chief Petty Officer. He spent more than eleven of those years deployed abroad, including deployments in support of Operations Iraqi and Enduring Freedom. Pl.'s Mot. for Judgment on the Administrative Record ("MJAR") at 4. Mr. Strand earned several commendations and personal awards during his service, including four Navy and Marine Corps Achievement Medals and four Good Conduct Medals. Id. Mr. Strand's service record reflects high marks for military performance and confirms his qualification as an "information assurance professional" whom the military trusted with classified information. Id. at 4-5.

Prior to the incident that led to his separation from the Navy, Mr. Strand's evaluations portray an exemplary officer ripe for further promotion.[2] See AR 105 ("His contributions to ENTERPRISE and the Navy have been exemplary. He is ready for greater responsibility. Promote to Senior Chief Petty Officer."); AR 107 ("Petty Officer Strand is a dynamic leader . . . . Continue to select for the most challenging assignments and promote ahead of his peers."); AR 109 ("Superb Manager. . . . An extraordinary coach and mentor.

---

[1] The facts in this decision are taken from the administrative record ("AR"). The pages in the administrative record are numbered in sequence. The Court's citations to the administrative record are to the AR page numbers.

[2] There is one much older negative conduct offense reflected in Mr. Strand's record. While serving on the USS Thomas C. Hart as a new Radioman Petty Officer, Third Class in 1992, at the age of twenty-two, Mr. Strand was counseled for "ABUSE OF ALCOHOL WHICH RESULTS IN DISORDERLY CONDUCT" and instructed to "REFRAIN FROM OVERINDULGENCE IN ALCOHOLIC BEVERAGES." Am. Compl. at 3-4, citing NAVSPERS 1070-613, February 26, 1992. Mr. Strand served without incident from 1992 to 2007.

He is a pillar for subordinates and juniors alike to emulate. . . . Ready for Chief NOW! Petty Officer Strand has my highest personal recommendation for advancement to Chief Petty Officer.").

After returning from his final combat deployment in the spring of 2007, Mr. Strand discovered that his wife had emptied his bank account and left home without explanation, taking his children and belongings with her. AR 059. A heated confrontation at his wife's new apartment building in June 2007 led to Mr. Strand's first negative fitness report. Pl.'s MJAR at 5; AR 103 ("Chief Strand displayed unsatisfactory conduct and decision making for a Chief Petty Officer."). In February 2008, Mr. Strand was arrested after shooting at the car his wife and her boyfriend were driving. As a result of that incident, Mr. Strand was convicted of attempted malicious wounding, attempted unlawful wounding, and use of a firearm in the commission of a felony. AR 009. Following his conviction, Mr. Strand was administratively separated from the Navy. His discharge was characterized as "under other than honorable circumstances" with less than 20 years of service. Id. Mr. Strand was released from prison for good behavior after serving three years of his six-year sentence. Id.

Upon his release, Mr. Strand asked the Navy Discharge Review Board ("NDRB" or "Discharge Board") to upgrade his service characterization and change his reentry code. AR 078. Although it initially denied Mr. Strand's requests, the Discharge Board eventually granted Mr. Strand partial relief when he appeared before the NDRB on December 12, 2013. The Discharge Board agreed to change the characterization of Mr. Strand's service from under other than honorable conditions to general under honorable conditions, but declined to revise the narrative reason for discharge in his record. AR 032.

After his success before the Discharge Board, Mr. Strand petitioned the Board for Correction of Naval Records ("BCNR" or "Board for Correction"), "requesting six months retirement credit with an honorable characterization of service, or an upgrade of his general discharge to honorable, a change of his narrative reason for separation, and a favorable reenlistment code." AR 008. On December 15, 2014, after a full review of Mr. Strand's application, naval record, record evidence and deliberations by a quorum, the Board for Correction came to the following conclusion:

> Upon review and consideration of all the evidence of record, the Board concludes that Petitioner's request warrants partial favorable action. Nonetheless, the Board initially notes the seriousness of Petitioner's disciplinary infractions and does not condone his misconduct. However, the Board also notes Petitioner's overall record of more than 19 years and six months of satisfactory service, which included being awarded

> four Navy and Marine Corps Achievement Medals, four Good Conduct Medals, and personal awards. The Board further notes his good post service conduct and early release from civil confinement due to his good behavior.
>
> The Board considered the fact that NDRB upgraded the characterization of service to general under honorable conditions based, in part, on Petitioner's overall record of service and good post service conduct. With that in mind, the Board concluded that Petitioner has suffered long enough for his indiscretion and should be granted relief in the form of credited time served for retirement, i.e., approximately six months. . . .

AR 010-011, BCNR Decision dated December 15, 2014. Based on its consideration of all of the evidence of record, the Board for Correction recommended "[t]hat Petitioner's naval record be corrected to show he was honorably retired with 20 years of service vice issued a general discharge under honorable conditions by reason of misconduct (civil conviction) on 26 June 2009." AR 011.

The Secretary of the Navy is authorized under 10 U.S.C. § 1552, as implemented by SECNAVINST 5420.193, to correct a Navy member's service record when "necessary to correct an error or remove an injustice." In exercising this authority, the Secretary must act through a board of civilians, in this case the BCNR, who shall review and evaluate an applicant's claim. SECNAVINST 5420.193 at 3. Although not required, the Executive Director of the BCNR chose to seek secretarial approval of the BCNR's recommendation to correct Mr. Strand's record.[3] On December 15, 2014, the same day that a quorum of the BCNR unanimously recommended correcting Mr. Strand's naval record, Executive Director Robert J. O'Neill unilaterally opted to seek review of the BCNR's recommendation, writing "[i]t is my opinion, based on the seriousness of the offense and the significant grant of relief, that SECNAV should review this case for decision." AR 013.

On February 3, 2015, Robert L. Woods, an Assistant General Counsel, Navy Manpower and Reserve Affairs, rejected the BCNR's decision in a two-paragraph

---

[3] Section 6(e)(1) allows that "[w]ith respect to all petitions for relief properly before it, the Board is authorized to take final corrective action on behalf of the Secretary . . ." except under three circumstances, the last of which being that "[i]t is in the category of petitions reserved for decision by the Secretary of the Navy." SECNAVINST 5420.193, Section 6(e)(1)(c). Section 6(e)(2)(c), cited in the secretarial review memorandum, is a discretionary catchall category that references "[s]uch other petitions as, in the determination of the Office of the Secretary or the Executive Director, warrant Secretarial review."

memorandum.[4]   AR 003.   Mr. Woods gave two rationales for overturning the BCNR's decision.   First, he stated that granting the recommended relief would contravene "Navy core values and practice in similar cases . . . ."   Id.   Second, quoting an April 3, 2009 Administrative Separation Memorandum prepared by Mr. Strand's commanding officer, Mr. Woods stated that Mr. Strand "had a 'long-standing history of FAP [Family Advocacy Program] involvement and domestic violence issues.'"   Id.

Before this Court, Mr. Strand argues that Mr. Woods's decision was arbitrary and capricious and not supported by substantial evidence, and urges this Court to give effect to the Board for Correction's recommendation.   Alternatively, Mr. Strand argues that he was denied his right to an administrative review board.   Mr. Strand seeks monetary relief in the form of active duty pay, back pay, and applicable pay going forward, and asks that the Court deny the Government's counterclaim.   The Government maintains that the Secretary properly rejected the BCNR's recommendation and that Mr. Strand's claim for retirement is based on equity rather than legal error and therefore not eligible for review before this Court.   Additionally, the Government contends that Mr. Strand waived his right to judicial review of certain issues by failing to raise them before the NDRB, the BCNR, or the Secretary.   The Government also argues that Mr. Strand's challenge to the Secretary's decision and request for reinstatement of the BCNR's recommendation present nonjusticiable claims.   Finally, in its counterclaim, the Government claims that it is entitled to an award "based upon overpayments made to Mr. Strand in the amount of $79,626.61 for which he was not entitled, plus interest, fees, and penalties . . . ."   Gov't Counterclaim at ¶ 21(A).

Discussion

A.   <u>Subject Matter Jurisdiction</u>

In the Court of Federal Claims, "[b]ecause subject matter jurisdiction is a threshold matter, it must be established before the case can proceed on the merits."   <u>Sellers v. United States</u>, 110 Fed. Cl. 62, 66 (2013) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94–95 (1998)).   In this case, the Court's subject matter jurisdiction is derived from both the Tucker Act, 28 U.S.C. § 1491, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 703.   The Tucker Act grants jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."   28 U.S.C.

---

[4] The Secretary of the Navy delegated to the Assistant Secretary, Manpower and Reserve Affairs the authority to review BCNR petitions if required.   SECNAVINST 5420.193 at 1-2 (¶b) (Nov. 1997).   The Assistant Secretary in turn delegated that authority to the assistant general counsel of Manpower and Reserve Affairs.   Gov't MJAR at 11, n.6.

§ 1491(a)(1).  The APA in turn entitles a person legally wronged by agency action to seek judicial review, thus waiving sovereign immunity of the United States.  5 U.S.C. § 703; Weaver v. United States, 46 Fed. Cl. 69, 76 (2000).  Thus, in conjunction with the APA, this Court has jurisdiction pursuant to the Tucker Act to review a decision by a corrections board, or a decision to override a corrections board recommendation, "[t]o provide an entire remedy and to complete the relief afforded by the judgment" by issuing an "order directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records . . . ."  28 U.S.C. § 1491(a)(2); see also Weaver, 46 Fed. Cl. at 76-77.

The Tucker Act, however, does not confer any substantive rights upon Plaintiff and Plaintiff may not rely on the APA as an independent source of jurisdiction as it does not mandate payment of money damages.  Thus, Plaintiff must establish an independent right to money damages from a money-mandating source within a contract, regulation, statute or constitutional provision in order for the case to proceed.  Jan's Helicopter Serv. Inc. v. FAA, 525 F.3d 1299, 1306 (Fed. Cir. 2008); Volk v. United States, 111 Fed. Cl. 313, 323 (2013).  Here, the separate money-mandating sources are 10 U.S.C. § 6333, which provides the schedule according to which military retired and retainer pay are computed, and 37 U.S.C. § 204, which governs the portion of Mr. Strand's pay the Government argues should be disgorged.

B. Standard of Review

Rule 52.1 of this Court governs motions for judgment on the administrative record.  A review of this kind is like a paper trial based upon the documents assembled by the agency.  The Court makes factual findings based upon the evidence presented in this record.  See, e.g., Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005); Coastal Envtl. Grp., Inc. v. United States, 118 Fed. Cl. 1, 10 (2014).  To review a motion under Rule 52.1, this Court must decide whether a party has met its burden of proof based on the evidence in the record given all disputed and undisputed facts.  Anderson v. United States, 111 Fed. Cl. 572, 578 (2013), aff'd (Fed. Cir. 13-5117, July 11, 2014); Bannum, Inc., 404 F.3d at 1356.

In reviewing the actions of a military correction board, this Court must apply the standard of review set forth in the APA. 5. U.S.C. § 706.  Under section 706(2)(A), this Court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(A).  The Court shall overturn a correction board's decision only if it determines that the decision was "arbitrary and capricious, unsupported by substantial evidence, or not in accordance with the applicable laws or regulations."  Laningham v. United States, 30 Fed. Cl. 296, 310 (1994).  Although the Court reviews a service

secretary's decision to overrule a corrections board recommendation pursuant to the same standard, its review nevertheless "is limited in nature." Moehl v. United States, 34 Fed. Cl. 682, 690 (1996). Thus, a secretary's decision may "differ with a board's recommendations where the evidence is susceptible of varying interpretations." Id. at 690 (citing Sanders v. United States, 594 F.2d 804, 812 (1979)). Nevertheless, a secretary may not "arbitrarily refuse to follow the fact findings of the correction board where all the evidence supports the board's findings." Moehl, 34 Fed. Cl. at 690 (citing Hertzog v. United States, 167 Ct. Cl. 377 (1964); see also Boyd v. United States, 207 Ct. Cl. 1, 8 (1975) ("The court, in turn, may reject the decision of a Secretary only if he has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations. Then we will not hesitate to set him right.").

### C. Mr. Woods's Decision to Overrule the BCNR Recommendation

The Secretary of a military department is required to act through boards of civilian officers or employees in reviewing and correcting military records. 10 U.S.C. § 1552. Generally, after reviewing a service member's record, the Board for Correction is authorized to take final corrective action based on its findings. SECNAVINST 5420.193, Section 6(e)(1). Even in those instances where secretarial review or approval is sought or required, the Secretary must nevertheless justify a decision to overturn a recommendation that is supported by the record. Thus, when a secretary goes outside of the record before the board, the secretary "must justify such a departure by explicitly stating the 'policy reasons' behind such action." Hertzog v. United States, 167 Ct. Cl. 377, 387 (1964). In Hertzog, the Court held that in the absence of such an explanation, the Secretary's discretionary action was arbitrary and capricious. Id. at 388.

"Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest that the correction of those errors and injustices was to be in the hand of civilians." Id. at 386 (quoting Proper v. United States, 139 Ct. Cl. 511 (1957)). Accordingly, a Secretary may not rely on the advice of a military officer as justification for overruling a reasoned BCNR recommendation. Weiss v. United States, 187 Ct. Cl. 1, 11 (1969) (explaining that "[t]he thrust of the Proper opinion is that a Secretary of a military department cannot overrule the recommendations of a civilian correction board on the advice of a military officer unless the findings of the board are not justified by the record before it."). Ultimately, because the function of the BCNR is not merely advisory, the Secretary is not free to reject a recommendation without proper justification. See Weiss, 187 Ct. Cl at 10; Hertzog, 167 Ct. Cl. at 386-87; Proper, 139 Ct. Cl. at 526. Although, "the final authority regarding requested corrections is vested in the

Secretary," such authority must nevertheless be exercised in accordance with the law. Strickland v. United States, 423 F.3d 1335, 1342 (Fed. Cir. 2005).

In this case, Mr. Woods overruled the BCNR's recommendation to grant partial relief to Mr. Strand on two grounds. As the first ground for overruling the BCNR, Mr. Woods stated that "the relief recommended by the Board is wholly inconsistent with Navy core values and practice in similar cases involving discharge for criminal conduct and conviction." AR 003. However, notwithstanding his reference to "core values," Mr. Woods failed to cite a single specific core value or explain how the Board's recommendation ran counter to any such value. If the Secretary goes beyond the record before the Board for Correction in overruling a recommendation, the Secretary must explicitly set forth the policy reasons for doing so. Hertzog, 167 Ct. Cl. at 386-87. Here, a mere reference to "core values" provides no reasoning for this Court to review. In the absence of further explanation, Mr. Woods's vague and imprecise proffered justification for overruling the BCNR's reasoned recommendation "cannot be characterized as other than capricious." Betts v. United States, 145 Ct. Cl. 530, 535 (1959) (explaining that "[a] decision contrary to all evidence, and for which, even on post audit, no reason can be given except an irrelevant reason, cannot be characterized as other than capricious. As such it deserves only to be ignored, and we ignore it.").

As the second ground for his decision, Mr. Woods quoted from a memorandum prepared by Mr. Strand's former commanding officer, Captain H. D. Starling II, claiming that Mr. Strand had a "long-standing history of FAP [Family Advocacy Program] involvement and domestic violence issues." AR 003 (quoting AR 088, Administrative Separation Memorandum, April 3, 2009). This statement is not supported by the record before the Court and, other than a passing reference to Captain Starling's statement, the Board for Correction's recommendation memorandum includes no discussion of such history. Instead, the Board for Correction explicitly noted "the seriousness of [Plaintiff's] disciplinary infractions," and explained that it did "not condone his misconduct." AR 010. However, the BCNR also recognized that Mr. Strand (1) satisfactorily served his country for nineteen years and six months, (2) was granted partial relief by the Naval Discharge Review Board "based, in part, on [his] overall record of service and good post service conduct," and (3) paid his debt to society, earning "early release from civil confinement due to his good behavior." AR 010. Given that the BCNR's findings are based on a thorough consideration of the evidence of record, this Court cannot uphold Mr. Woods's decision to overrule those findings on the basis of a military official's statement, especially where there is no evidentiary support for that statement in the record before the BCNR.

## Conclusion

Ultimately, Mr. Woods's decision to overrule the BCNR's reasoned recommendation is simply not justified in the two-paragraph memorandum that is before

this Court.  Considering the entire administrative record, the Court finds the Secretary's disapproval of the Board for Correction's recommendation arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence.  The Court directs the Navy to carry out the BCNR's recommendation "[t]hat Petitioner's naval record be corrected to show he was honorably retired with 20 years of service vice issued a general discharge under honorable conditions by reason of misconduct (civil conviction) on 26 June 2009."  The Court need not reach the separate issue of whether Mr. Strand was denied his right to an administrative separation board.

Accordingly, the Court GRANTS Plaintiff's cross-motion for judgment on the administrative record, and DENIES Defendant's motion for judgment on the administrative record.  The Court directs the Navy to retire Mr. Strand with all appropriate back pay, benefits, and allowances.  The Court GRANTS IN PART Defendant's counterclaim and DENIES Plaintiff's motion to dismiss the counterclaim.  The Government may deduct no more than $79,626.61, the amount the Navy claims it erroneously paid to Mr. Strand, from the amount due to Mr. Strand pursuant to this opinion.  The Government explicitly is not entitled to any interest, fees, or penalties on its counterclaim, as the payments in question were due solely to the Government's error.  Defendant's motion to supplement the administrative record and motion to remand are DENIED as MOOT, as is Plaintiff's second motion to strike.  The Clerk shall enter judgment in accordance with this opinion.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge