# In the United States Court of Federal Claims

No. 15-601C

(Filed: July 31, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WALTER N. STRAND, III, | * |
| | * |
| Plaintiff, | * Action for Review of Military Records; Assistant General Counsel's Reversal of Decision by Board for Correction of Naval Records; Decision on Remand from Federal Circuit; Standard of Review; Substantial Evidence. |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jeffery M. Chiow*, with whom was *Lucas T. Hanback*, Rogers Joseph O'Donnell, P.C., Washington, D.C., for Plaintiff.

*Daniel K. Greene,* with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Lieutenant Maryam Austin*, Office of the Judge Advocate General, U.S. Navy, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Plaintiff, an enlisted serviceman in the United States Navy, brings this action to correct the manner by which he was separated from the military after more than nineteen years of largely exemplary service. In a proceeding before the Board for Correction of Naval Records, the Board primarily agreed with Plaintiff's position, but the favorable ruling was promptly reversed by the Assistant General Counsel for Navy Manpower and Reserve Affairs. The Court held that the Assistant General Counsel's reversal of the Board's decision was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. The U.S. Court of Appeals for the Federal Circuit upheld this Court's ruling and ordered the Court to remand the case to the Navy. The new Assistant General Counsel again reversed the Board's favorable ruling. The Court must now review whether

the new Assistant General Counsel's reversal was arbitrary, capricious, an abuse of discretion, or not supported by substantial evidence.

Factual and Procedural Background[1]

Plaintiff, Walter N. Strand, III, brings claims before this Court which involve the manner in which he was separated from the Navy.  Mr. Strand enlisted in the Navy in 1988 and served for more than nineteen years, rising to the rank of Chief Petty Officer.  He spent more than eleven of those years deployed abroad, including deployments in support of Operations Iraqi Freedom and Enduring Freedom.  Pl.'s Mot. for J. on the Admin. R. ("MJAR") at 4, Dkt. No. 23.  Mr. Strand earned several commendations and personal awards during his service, including four Navy and Marine Corps Achievement Medals and four Good Conduct Medals.  Id.  Mr. Strand's service record reflects high marks for military performance and confirms his qualification as an "information assurance professional" whom the military trusted with classified information.  Id. at 4–5.

Prior to the incident that led to his separation from the Navy, Mr. Strand's evaluations portray an exemplary officer ripe for further promotion.[2]  See AR 105 ("His contributions to ENTERPRISE and the Navy have been exemplary.  He is ready for greater responsibility.  Promote to Senior Chief Petty Officer."); AR 107 ("Petty Officer Strand is a dynamic leader. . . .  Continue to select for the most challenging assignments and promote ahead of his peers."); AR 109 ("Superb Manager. . . .  An extraordinary coach and mentor.  He is a pillar for subordinates and juniors alike to emulate. . . .  Ready for Chief NOW!  Petty Officer Strand has my highest personal recommendation for advancement to Chief Petty Officer.").

After returning from his final combat deployment in the spring of 2007, Mr. Strand discovered that his wife had emptied his bank account and left home without explanation, taking his children and belongings with her.  AR 059.  A heated confrontation at his wife's new apartment building in June 2007 led to Mr. Strand's first negative fitness report.  Pl.'s MJAR at 5, Dkt. No. 23; AR 103 ("Chief Strand displayed unsatisfactory conduct and

---

[1] The facts in this decision are taken from the administrative record ("AR") and the administrative record volume II ("AR II").  The pages in both volumes of the administrative record are numbered in sequence.  The Court's citations to both volumes of the administrative record are to the AR page numbers.

[2] There is one much older negative conduct offense reflected in Mr. Strand's record.  While serving on the USS Thomas C. Hart as a new Radioman Petty Officer, Third Class, in 1992, at the age of twenty-two, Mr. Strand was counseled for "ABUSE OF ALCOHOL WHICH RESULTS IN DISORDERLY CONDUCT" and instructed to "REFRAIN FROM OVERINDULGENCE IN ALCOHOLIC BEVERAGES."  Am. Compl. at 3–4, Dkt. No. 16 (citing NAVSPERS 1070-613, February 26, 1992).  The same incident was addressed in a counseling form dated September 29, 1993.  Id.  Mr. Strand served without incident from 1993 to 2007.

decision making for a Chief Petty Officer."). In February 2008, Mr. Strand was arrested after shooting at the car his wife and her boyfriend were driving. As a result of that incident, Mr. Strand was convicted of attempted malicious wounding, attempted unlawful wounding, and use of a firearm in the commission of a felony. AR 009. Following his conviction, Mr. Strand was administratively separated from the Navy. His discharge was characterized as "under other than honorable circumstances" with less than twenty years of service. Id. Mr. Strand was released from prison for good behavior after serving three years of his six-year sentence. Id.

Upon his release, Mr. Strand asked the Navy Discharge Review Board ("NDRB") to upgrade his service characterization and change his reentry code. AR 078. Although it initially denied Mr. Strand's requests, the NDRB eventually granted Mr. Strand partial relief when he appeared before them on December 12, 2013. The NDRB agreed to change the characterization of Mr. Strand's service from "under other than honorable conditions" to "general under honorable conditions," but declined to revise the narrative reason for discharge in his record. AR 032.

After his success before the NDRB, Mr. Strand petitioned the Board for Correction of Naval Records ("BCNR"), "requesting six months retirement credit with an honorable characterization of service, or an upgrade of his general discharge to honorable, a change of his narrative reason for separation, and a favorable reenlistment code." AR 008. On December 15, 2014, after a full review of Mr. Strand's application, naval record, record evidence, and deliberations by a quorum, the BCNR came to the following conclusion:

> Upon review and consideration of all the evidence of record, the Board concludes that Petitioner's request warrants partial favorable action. Nonetheless, the Board initially notes the seriousness of Petitioner's disciplinary infractions and does not condone his misconduct. However, the Board also notes Petitioner's overall record of more than 19 years and six months of satisfactory service, which included being awarded four Navy and Marine Corps Achievement Medals, four Good Conduct Medals, and personal awards. The Board further notes his good post service conduct and early release from civil confinement due to his good behavior.
>
> The Board considered the fact that NDRB upgraded the characterization of service to general under honorable conditions based, in part, on Petitioner's overall record of service and good post service conduct. With that in mind, the Board concluded that Petitioner has suffered long enough for

3

> his indiscretion and should be granted relief in the form of
> credited time served for retirement, i.e., approximately six
> months . . . .

AR 010–11, BCNR Decision dated December 15, 2014. Based on its consideration of all of the evidence of record, the BCNR recommended "[t]hat Petitioner's naval record be corrected to show he was honorably retired with 20 years of service vice issued a general discharge under honorable conditions by reason of misconduct (civil conviction) on 26 June 2009." AR 011.

The Secretary of the Navy is authorized under 10 U.S.C. § 1552, as implemented by SECNAVINST 5420.193, to correct a Navy member's service record when "necessary to correct an error or remove an injustice." In exercising this authority, the Secretary must act through a board of civilians, in this case the BCNR, who shall review and evaluate an applicant's claim. SECNAVINST 5420.193 at 3. Although not required, the Executive Director of the BCNR chose to seek secretarial approval of the BCNR's recommendation to correct Mr. Strand's record.[3] On December 15, 2014, the same day that a quorum of the BCNR unanimously recommended correcting Mr. Strand's naval record, Executive Director Robert J. O'Neill unilaterally opted to seek review of the BCNR's recommendation, writing "[i]t is my opinion, based on the seriousness of the offense and the significant grant of relief, that SECNAV should review this case for decision." AR 013.

On February 3, 2015, Robert L. Woods, Assistant General Counsel, Navy Manpower and Reserve Affairs, rejected the BCNR's decision in a two-paragraph memorandum.[4] AR 003. Mr. Woods gave two rationales for overturning the BCNR's decision. First, he stated that granting the recommended relief would contravene "Navy core values and practice in similar cases." Id. Second, quoting an April 3, 2009 Administrative Separation Memorandum prepared by Mr. Strand's commanding officer, Mr. Woods stated that Mr. Strand "had a 'long-standing history of FAP [Family Advocacy Program] involvement and domestic violence issues.'" Id.

---

[3] Section 6(e)(1) allows that "[w]ith respect to all petitions for relief properly before it, the Board is authorized to take final corrective action on behalf of the Secretary…" except under three circumstances, the last of which being that "[i]t is in the category of petitions reserved for decision by the Secretary of the Navy." SECNAVINST 5420.193, Section 6(e)(1)(c). Section 6(e)(2)(c), cited in the secretarial review memorandum, is a discretionary catchall category that references "[s]uch other petitions as, in the determination of the Office of the Secretary or the Executive Director, warrant Secretarial review."

[4] The Secretary of the Navy delegated to the Assistant Secretary, Manpower and Reserve Affairs the authority to review BCNR petitions if required. SECNAVINST 5420.193 at 1–2 (¶b) (Nov. 1997). The Assistant Secretary in turn delegated that authority to the assistant general counsel of Manpower and Reserve Affairs. Def.'s Cross-MJAR at 11 n.6, Dkt. No. 35.

On June 15, 2015, Mr. Strand challenged Mr. Wood's decision before this Court. Strand v. United States, 127 Fed. Cl. 44, 46 (2016). Mr. Strand initially brought this action by filing a complaint as a *pro se* plaintiff. Id. Shortly thereafter, Mr. Strand was able to secure representation through this Court's pro bono referral program and subsequently filed an amended complaint on October 8, 2015. Id. Mr. Strand prevailed, showing that Mr. Woods' disapproval of the BCNR's recommendation was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. Id. at 51. On appeal, the U.S. Court of Appeals for the Federal Circuit found that "the Secretary's finding that Mr. Strand had a long-standing history of domestic violence issues and FAP involvement is not supported by substantial evidence." Strand v. United States, 706 Fed. Appx. 996, 1000 (Fed. Cir. 2017) ("Strand II"). The court then directed this Court to remand the case to the Navy, requiring that the Secretary consider whether he or she would reach the same conclusion to deny Mr. Strand relief in the absence of such substantial evidence. Id. at 1001–02. This Court issued an Order on November 21, 2017, remanding the case to the Secretary of the Navy in accordance with the Federal Circuit's Mandate. See Dkt. No. 67.

The new Assistant General Counsel for Manpower and Reserve Affairs, Catherine L. Kessmeier ("Ms. Kessmeier" or "the Secretary"), sent a letter to counsel for Plaintiff identifying the references she would be using to review Mr. Strand's case and inviting him to submit any additional information for review. AR II 001. Counsel responded by confirming that the documents Ms. Kessmeier planned to review were appropriate, and explained the background of the case. AR II 002–03. Counsel for Plaintiff also mentioned that the BCNR granted Mr. Strand relief based on more than just his prior service alone. AR II 003. Plaintiff's counsel then continued to state that both this Court and the Federal Circuit declined to adopt the rationale that denying Mr. Strand relief on the Navy core values alone was sufficient. AR II 004. Additionally, Plaintiff's counsel contended that each case should be judged on its own merits as to whether or not it conforms to the Navy's core values—not on the Navy's practice in similar cases. AR II 004 n.2.

On January 5, 2018, Ms. Kessmeier again denied Mr. Strand relief. AR II 013. In her memorandum, Ms. Kessmeier expanded on the core values in relation to both the incident for which Mr. Strand was convicted, as well as a counseling and non-judicial punishment for an alcohol-related incident from 25 years ago. AR II 009–12. Ms. Kessmeier explained that the counseling and non-judicial punishment Mr. Strand received for this alcohol-related incident should have been "clear and repeated notice" that his conduct did not comport with the Navy's core values. AR II 010. Ms. Kessmeier also compared Mr. Strand's case to other cases before the military justice system—forums in which Mr. Strand has never appeared. See AR II 012; see also Supplemental Compl. ¶ 49, Dkt. No. 80 ("Suppl. Compl."). Ultimately, Ms. Kessmeier concluded that Mr. Strand's application did not warrant relief and that his discharge to "general under honorable

5

conditions" sufficed to "reflect[] his 19.5 years of satisfactory service and post-incarceration efforts to rebuild his life." AR II 013.

In response to Ms. Kessmeier's decision, Mr. Strand filed a supplemental complaint before this Court. In his supplemental complaint, Mr. Strand argues that Ms. Kessmeier's decision was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence, and urges this Court to give effect to the BCNR's initial recommendation. Suppl. Compl. at 18. Mr. Strand asks that the Court direct the Navy to correct Mr. Strand's record consistent with the BCNR's decision granting him retirement with twenty years of service and seeks monetary relief in the form of back pay calculated from his date of separation on June 26, 2009, up to the present based on his retirement credit, with interest, and applicable pay and benefits moving forward. Id. The Government maintains that Ms. Kessmeier properly rejected the BCNR's recommendation and that Mr. Strand waived his right to judicial review of certain issues by failing to raise them to the Navy on remand.

## Discussion

### A. Subject Matter Jurisdiction

In the Court of Federal Claims, "[b]ecause subject matter jurisdiction is a threshold matter, it must be established before the case can proceed on the merits." Sellers v. United States, 110 Fed. Cl. 62, 66 (2013) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998)). In this case, the Court's subject matter jurisdiction is derived from both the Tucker Act, 28 U.S.C. § 1491, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 703. The Tucker Act grants jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The APA in turn entitles a person legally wronged by agency action to seek judicial review, thus waiving sovereign immunity of the United States. 5 U.S.C. § 703; Weaver v. United States, 46 Fed. Cl. 69, 76 (2000). Thus, in conjunction with the APA, this Court has jurisdiction pursuant to the Tucker Act to review a decision by a corrections board, or a decision to override a corrections board recommendation, "[t]o provide an entire remedy and to complete the relief afforded by the judgment" by issuing an "order directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2); see also Weaver, 46 Fed. Cl. at 76–77.

The Tucker Act, however, does not confer any substantive rights upon a plaintiff, and a plaintiff may not rely on the APA as an independent source of jurisdiction, as it does not mandate payment of money damages. Thus, a plaintiff must establish an independent

right to money damages from a money-mandating source within a contract, regulation, statute, or constitutional provision in order for the case to proceed.  Jan's Helicopter Serv. Inc. v. FAA, 525 F.3d 1299, 1306 (Fed. Cir. 2008); Volk v. United States, 111 Fed. Cl. 313, 323 (2013).  Here, the separate money-mandating source is 10 U.S.C. § 6333, which provides the schedule according to which military retired and retainer pay are computed.

B.  Standard of Review

1.  Rule 12(b)(6) Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court must accept as true all factual allegations submitted by the plaintiff.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accepting those allegations as true, for the plaintiff to survive dismissal, the Court must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  The plaintiff's factual allegations must be substantial enough to raise the right to relief above the speculative level, accepting all factual allegations in the complaint as true and indulging all reasonable inferences in favor of the non-movant.  Twombly, 550 U.S. at 545; Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2008).

In this case, the Government first argues that Mr. Strand's supplemental complaint must be dismissed pursuant Rule 12(b)(6) because it presents a nonjusticiable controversy in which the Court is unable to grant relief.  See Def.'s Mot. to Dismiss & MJAR at 17–18, Dkt. No. 84.  In so arguing, the Government opines that a plaintiff can only challenge a Secretary's procedural errors and may not challenge the merits of that Secretary's decision, further arguing that Mr. Strand has improperly challenged the latter.  Id. at 17.  The Court finds the Government's argument unavailing.  To start, this Court and the Federal Circuit have already issued decisions on the merits in earlier iterations of this case where Mr. Strand has challenged the merits of the Secretary's decision to deny him relief.  See Strand, 127 Fed. Cl. 44; Strand II, 706 Fed. Appx. 996.  Moreover, even if a plaintiff may only challenge a Secretary's procedural errors, the Court agrees that Mr. Strand's allegations against the Secretary's decision can be viewed as procedural in nature and present a justiciable controversy in which this Court has the ability to grant relief.  See Pl.'s Cross-MJAR at 7–8, Dkt. No. 85.  As such, the Court DENIES the Government's motion to dismiss pursuant to Rule 12(b)(6) and turns next to the parties' cross-motions for judgment on the administrative record.

## 2.  Motion for Judgment on the Administrative Record

Rule 52.1 of this Court governs motions for judgment on the administrative record. A review of this kind is like a paper trial based upon the documents assembled by the agency.  The Court makes factual findings based upon the evidence presented in this record.  See, e.g., Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005); Coastal Envtl. Grp., Inc. v. United States, 118 Fed. Cl. 1, 10 (2014).  To review a motion under Rule 52.1, this Court must decide whether a party has met its burden of proof based on the evidence in the record given all disputed and undisputed facts.  Anderson v. United States, 111 Fed. Cl. 572, 578 (2013), aff'd (Fed. Cir. 13-5117, July 11, 2014); Bannum, Inc., 404 F.3d at 1356.

In reviewing the actions of a military correction board, this Court must apply the standard of review set forth in the APA, 5 U.S.C. § 706.  Under section 706(2)(A), the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(A).  The Court shall overturn a correction board's decision only if it determines that the decision was "arbitrary and capricious, unsupported by substantial evidence, or not in accordance with the applicable laws or regulations." Laningham v. United States, 30 Fed. Cl. 296, 310 (1994).  Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1935).

Although the Court reviews a service Secretary's decision to overrule a corrections board recommendation pursuant to the same standard, its review nevertheless "is limited in nature."  Moehl v. United States, 34 Fed. Cl. 682, 690 (1996).  Thus, a Secretary's decision may "differ with a board's recommendations where the evidence is susceptible of varying interpretations."  Id. at 690 (citing Sanders v. United States, 219 Ct. Cl. 285, 299 (1979)).  However, a Secretary may not "arbitrarily refuse to follow the fact findings of the correction board where all the evidence supports the board's findings." Moehl, 34 Fed. Cl. at 690 (citing Hertzog v. United States, 167 Ct. Cl. 377 (1964)); see also Boyd v. United States, 207 Ct. Cl. 1, 8 (1975) ("The court, in turn, may reject the decision of a Secretary only if he has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations.  Then we will not hesitate to set him right.").

## C.  Waiver of Mr. Strand's Arguments

The Government first contends that Mr. Strand waived his right to judicial review by failing to raise all but one of his arguments before the Navy on remand.  Def.'s Mot. to

Dismiss & MJAR at 14, Dkt. No. 84. It has long been held that once a party has availed him or herself to the administrative process of an agency, "he [or she] is bound by it unless the decision is unsupported by substantial evidence, arbitrary, capricious, or contrary to law." Doyle v. United States, 220 Ct. Cl. 285, 311 (1998) (citing Sanders v. United States, 219 Ct. Cl. 285, 298 (1979)). The reason for this rule is so that plaintiffs cannot "stand on their objections waiting to see if they [are] retroactively promoted by the [BCNR] and only upon the [BCNR's] adverse recommendations, contend that the remedy did not achieve its intended result." Id. at 312. "Absent a showing of good cause and prejudice, an appellant's failure to raise his constitutional claims in the military court system bars him from raising them in federal court." Martinez v. United States, 914 F.2d 1486, 1488 (Fed. Cir. 1990).

Contrary to the Government's assertions, Mr. Strand raised his arguments prior to remand during the first time this case was litigated before this Court. Both parties agreed that the Navy would reference four documents in its review: (1) the Remand Order of this Court, (2) the judgment of the Federal Circuit, (3) the judgment of this Court, and (4) the Administrative Record Volume I. AR II 001–02. Therefore, by incorporating the decisions of the courts in the Secretary's review on remand, Mr. Strand sufficiently raised the following three arguments that the Government alleges he waived in the Amended Complaint: (1) that the Assistant General Counsel lacked the discretion to reject the BCNR's recommendation without justification, see Am. Compl. at 8, Count I, Dkt. No. 16; (2) that it was improper to compare Mr. Strand's case to cases tried in the military justice system, see id.; and (3) that Mr. Strand was entitled to the protection of 10 U.S.C. § 1176, see id. at Count III.

The one argument that Mr. Strand concedes he did not raise prior to remand was that "reliance on the core values alone as a basis to deny relief is specious when those values are untethered to any statute or regulation, and are not themselves determinant of punishment." Pl.'s Cross-MJAR at 12, Dkt. No. 85. This argument, however, is attached to the argument that the Secretary acted arbitrarily and without substantial evidence, since Mr. Strand alleges that the core values standing alone are arbitrary. Thus, having found that Mr. Strand did not waive any of the above arguments, the Court must now look to whether Ms. Kessmeier's decision was arbitrary and capricious, an abuse of discretion, or not supported by substantial evidence.

### D. Ms. Kessmeier's Decision to Overrule the BCNR's Recommendation

#### 1. Application of the Navy's Core Values

The Secretary of a military department is required to act through boards of civilian officers or employees in reviewing and correcting military records. 10 U.S.C. § 1552. Generally, after reviewing a service member's record, the BCNR is authorized to take final

corrective action based on its findings.  SECNAVINST 5420.193, Section 6(e)(1).  Even in those instances where secretarial review or approval is sought or required, the Secretary must nevertheless justify a decision to overturn a recommendation that is supported by the record.  Thus, when a Secretary goes outside of the record before the board, the Secretary "must justify such a departure by explicitly stating the 'policy reasons' behind such action." Hertzog, 167 Ct. Cl. at 387.  In Hertzog, the Court held that in the absence of such an explanation, the Secretary's discretionary action was arbitrary and capricious.  Id. at 388. Although "the final authority regarding requested corrections is vested in the Secretary," such authority must be exercised in accordance with the law.  Strickland v. United States, 423 F.3d 1335, 1342 (Fed. Cir. 2005).

Mr. Strand alleges that the Secretary's reliance on the core values alone is arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence.  In her decision, Ms. Kessmeier relied upon the following facts to deny Mr. Strand relief:  (1) two counselings and a non-judicial punishment stemming from an alcohol-related incident 25 years ago; (2) other cases from the military justice system; and (3) the conduct that led to Mr. Stand's conviction.  Pl.'s Cross-MJAR at 13, Dkt. No. 85.  Mr. Strand argues that these facts provide no basis to deny him relief because the facts are too "sparse" and the Secretary relies too heavily on her own subjective understanding and application of the Navy's "core values" to Mr. Strand's conduct.  Id.  The Government counters that Ms. Kessmeier's decision is supported by substantial evidence because of the two disciplinary entries Mr. Strand received early in his enlistment from alcohol-related incident in the early 1990s, as well as the BCNR's statement of recommendation for review by the Secretary and the characterization of his service.  Def.'s Resp. at 11, Dkt. No. 86.

Ms. Kessmeier contends that Mr. Strand's counselings and non-judicial punishment from 25 years ago gave him "notice" of his obligation to comply with the Navy's standards and relies on this argument to show Mr. Strand's alleged lack of courage and commitment. AR II 010–12.   The Navy's present core values, however, including courage and commitment, did not exist at the time of Mr. Strand's alcohol-related incident.  See Pl.'s Cross-MJAR at 13, Dkt. No. 85.  Thus, to give Mr. Strand retroactive "notice" of his obligation to comply with not-yet existing core values or standards is irrational, irrelevant, and certainly arbitrary and capricious.  Betts v. United States, 145 Ct. Cl. 530, 535 (1959) ("A decision . . . for which, even on post audit, no reason can be given except an irrelevant reason, cannot be characterized as other than capricious.").  The Court also notes that Mr. Strand was awarded a Good Conduct medal for the period covering the second counseling related to this incident.  Pl.'s Cross-MJAR at 15, Dkt. No. 85 (citing Suppl. Compl. ¶ 63; AR 194 (first Good Conduct Award on "96JAN01")).   Therefore, when assessing the record as a whole, Ms. Kessmeier's reliance on Mr. Strand's pre-2008 disciplinary entries and her retroactive application of Mr. Strand's earlier mishap to the Navy's not-yet existing

core values render her decision arbitrary, capricious, and not supported by substantial evidence.

### 2. Reliance on Cases From Other Military Tribunals

Ms. Kessmeier also cites to four military justice cases as further evidence that Mr. Strand should be denied the relief he requested.  AR II 012 (citing United States v. Sexton, 1 M.K. 679 (N.C.M.R. 1975); United States v. Gutierrez, 11 M.K. 122 (C.M.A. 1981); United States v. Wall, 2013 CCA LEXIS 418 (A.F. Ct. Crim. App. 2013); United States v. Knowles, 2016 CCA LEXIS 236 (N-M Ct. Crim. App. 2016)).  The Secretary contends that the NRDB's decision granting Mr. Strand partial relief is inconsistent with the Navy's practice in similar cases.  AR II 013.  Mr. Strand contends that comparing his case to these cases is erroneous because the Navy could have, but did not, prosecute Mr. Strand for his conduct in the military courts.  Pl.'s Cross-MJAR at 15, Dkt. No. 85.  Therefore, any comparison to the military justice system is speculation based on hypothetical facts.  Id. at 16.

As Mr. Strand correctly points out, none of the cases the Secretary relies upon "apply the core values to the facts of the respective case, and none deal with post-service efforts at rehabilitation."  Id.  By comparing Mr. Strand's civil case to military cases that do not apply the same analysis, and by claiming Mr. Strand would have received a punishment (which he did not), Ms. Kessmeier acted speculatively.  Rather than basing her decision on facts in the record, Ms. Kessmeier based her decision on hypothetical forecasting.  Thus, in the absence of providing a sufficient justification for her decision, the Court finds that the Secretary acted arbitrarily and capriciously in using these cases to justify her decision.  Hertzog, 167 Ct. Cl. at 387–88 (holding that in the absence of a justification for departing from the record before the board, the Secretary's discretionary action was arbitrary and capricious).

The Government further contends that the NDRB compared Mr. Strand's conviction to analogous convictions as well, and that this fact supports the Secretary's decision to deny Mr. Strand relief.  Def.'s Resp. at 11, Dkt. No 86.  However, the NDRB merely explained the usual procedure for someone convicted of the same offenses as Mr. Strand in the military courts, *not* in the civil courts.  AR 063.  Moreover, the NDRB did not cite to any actual cases in its decision.  Id.  What is more, the NDRB's regulations state:

> The primary function of the NDRB is to exercise its discretion
> on issues of equity by reviewing the individual merits of each
> application on a case-by-case basis.  Prior decisions in which
> the NDRB exercised its discretion to change a discharge based
> on issues of equity (including the factors cited in such

11

decisions or the weight given to factors in such decisions) do
not bind the NDRB in its review of subsequent cases because
no two cases present the same issues of equity.

32 C.F.R. § 724.902(c).  Thus, the NDRB's own regulations state that it should not be relying on other cases regardless, as it must view each case as a separate issue of equity. As such, the NDRB's decision provides no support for Ms. Kessmeier's reliance on the military justice cases, but rather shows that she acted arbitrarily and capriciously in reaching her decision.  See Dodson v. United States Gov't, Dep't of the Army, 988 F.2d 1199, 1204–05 (Fed. Cir. 1993) ("The boards for correction of military records may be reviewed for failure to correct plain legal error committed by the military . . . [including] the military's 'violation of statute, or regulation.'" (citations omitted)).

### 3.  Mr. Strand's Prior Conviction

Finally, as to Mr. Strand's prior conviction, the Government has already argued before this Court and the Federal Circuit that Mr. Strand's conduct in 2008 was inconsistent with the core values and showed a longstanding history of domestic violence.  See Strand, 127 Fed. Cl. 44; Strand II, 706 Fed. Appx. 996.  Both courts have rejected these arguments, however, and the Federal Circuit found that Mr. Strand's conduct did not constitute substantial evidence to support the Secretary's decision, ordering the Secretary's decision to be reversed and remanded.  Strand II, 706 Fed. Appx. at 1000 ("We conclude that the Secretary's decision is not supported by substantial evidence.  The Secretary relied on the sum of two facts in the record and two policy reasons to reject the BCNR's decision [including the Navy's core value]. . . . [B]ecause the Secretary relied on a combination of intertwined reasons, and Mr. Strand has shown that at least one of those reasons is not supported by substantial evidence, the record is not clear as to whether the Secretary would still reach the same conclusion.").

The Government also argues that BCNR Executive Director Robert O'Neill's recommendation that the Secretary review the BCNR's decision "based on the seriousness of the offense and the significant grant of relief" supports the Secretary's contention that Mr. Strand's offense on its own and its application to the core values is enough to deny him relief.  Def.'s Resp. at 11, 15, Dkt. No. 86.  Mr. O'Neill, however, did not sit on the Board when the Board reviewed Mr. Strand's case; rather, he was still an officer of the Navy and is now retired.  See AR 008; see also Pl.'s Rep. at 11, Dkt. No. 87.  The Government argues that "by deciding to make a recommendation instead of a final decision, the BCNR [specifically Mr. O'Neill] invited the Secretary to second-guess its recommendation."  Def.'s Mot. to Dismiss & MJAR at 16, Dkt. No. 84.  However, this Court already held that the Secretary may not rely on the advice or recommendation of a military officer in reversing the recommendation of the BCNR.  See Strand, 127 Fed. Cl.

at 51 ("[T]his Court cannot uphold [the Secretary's] decision to overrule [the BCNR's] findings on the basis of a military official's statement."); see also Strand II, 706 Fed. Appx. at 1000.

Further, Ms. Kessmeier failed to give any real consideration to Mr. Strand's post-service conduct. Instead, the Secretary relies almost solely on Mr. Strand's conduct that occurred prior to the creation of the Navy's current core values as well as the conduct for which Mr. Strand already served civil time, whereas the BCNR recognized that Mr. Strand satisfactorily served his country for nineteen years and six months, was granted partial relief by the NDRB "based, in part, on [his] overall record of service and good post service conduct," and paid his debt to society, earning "early release from civil confinement due to his good behavior." See AR 010. Ms. Kessmeier not only failed to give due consideration to the all the evidence before the BCNR and in the administrative record, but also failed to provide any substantial evidence to support her decision to deny Mr. Strand relief. Given that the BCNR's findings are based on a thorough consideration of the evidence of record, this Court cannot uphold Ms. Kessmeier's decision to overrule the Board on the basis of (1) core values alone and the retroactive application of Mr. Strand's singular alcohol-related incident from 1992 to those core values, especially since those core values did not yet exist at the time of this incident; (2) decisions of other military tribunals; and (3) Mr. Strand's prior conviction—a justification that has been rejected twice by this Court and the Federal Circuit. Consequently, the Court must hold that the Secretary's decision to overturn the BCNR's recommendation was arbitrary and capricious, and not supported by substantial evidence. See Hertzog, 167 Ct. Cl. at 387.

Finally, both parties agree that 10 U.S.C. § 1552(f)(2) grants the BCNR clemency power to strike evidence of Mr. Strand's criminal conviction from his records and upgrade his discharge conditions. Def.'s Resp. at 18, Dkt. No. 86; Pl.'s Rep. at 15, Dkt. No. 87. The Government argues only that 10 U.S.C. § 1552(f)(2) does not allow the BCNR to remove evidence of a court martial from the record. Def.'s Resp. at 18, Dkt. No. 86. However, Mr. Strand was not court martialed. Therefore, 10 U.S.C. § 1552(f)(2) provides no additional basis to deny Mr. Strand relief.

## Conclusion

Ultimately, Ms. Kessmeier's decision to overrule the BCNR's reasoned recommendation is simply not justified in her memorandum that is before this Court. Considering the entire administrative record, the Court finds the Secretary's disapproval of the BCNR's recommendation to be arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. The Court directs the Navy to carry out the BCNR's recommendation "[t]hat Petitioner's naval record be corrected to show he was honorably

retired with 20 years of service vice issued a general discharge under honorable conditions by reason of misconduct (civil conviction) on 26 June 2009."

Accordingly, the Court GRANTS Plaintiff's cross-motion for judgment on the administrative record, and DENIES Defendant's motion to dismiss and motion for judgment on the administrative record. The Court directs the Navy to correctly retire Mr. Strand with all appropriate back pay, benefits, and allowances. The Clerk shall enter judgment in accordance with this opinion.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge